# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| WEST LIBERTY FOODS, L.L.C., LIBERTY FREE RANGE PURVEYOR, L.L.C., and LIBERTY FREE RANGE POULTRY, L.L.C., | ) ) ) ) ) | Case No. 4:18-cv-280 |
| Plaintiffs, | ) ) | **DEFENDANTS' MEMORANDUM** |
| v. | ) ) | **OF LAW IN SUPPORT OF RULE** **12(B)(6) MOTION TO DISMISS** |
| BLUE APRON, LLC and BLUE APRON HOLDINGS, INC., | ) ) ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................. 3

FACTUAL BACKGROUND................................................................................................ 3

      I.      The Parties Engage in Preliminary Discussions About the Possibility of Jointly Buying a Poultry Business and Exchange a Preliminary Term Sheet; These Preliminary Discussions Are Never Further Formalized or Finalized ................. 3

      II.     WLF Does Not Allege that After Providing the Operating Term Sheet and Submitting the Acquisition LOI, the Parties Negotiated and Entered Into a Formal Partnership Agreement ........................................................................................ 7

ARGUMENT........................................................................................................................ 8

      I.     Plaintiffs Fail to State a Claim for Breach of a Written Contract (Count I) .......... 9

      II.    Plaintiffs Fail to State a Claim for Breach of Oral Contract (Count II)............... 11

      III.   Plaintiffs Fail to State a Claim for Breach of an Implied Contract (Count III) ... 13

      IV.   Plaintiffs Fail to State a Claim for Promissory Estoppel (Count IV) .................. 14

      V.    Plaintiffs Fail to State a Claim for Fraud (Count V) ........................................... 16

      VI.   Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Count VI) .......... 18

      VII.  Plaintiffs Fail to State a Claim for Unjust Enrichment (Count VII).................... 20

CONCLUSION.................................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aksman v. Xiongwei Ju*,
  799 N.Y.S.2d 493 (N.Y. App. 1st Dep't 2005) ................................................................10, 11

*Andersen Investments, LLC v. Factory Card Outlet of Am., Ltd.*,
  630 F. Supp. 2d 1030 (S.D. Iowa 2009) ..................................................................2, 10, 12

*Andrews v. Sony/ATV Music Publ'g, LLC*,
  2017 WL 770614 (S.D.N.Y. Feb. 24, 2017) ............................................................................13

*Apothecus Pharm. Corp. v. Hendrickson*,
  2017 WL 5495818 (E.D.N.Y. May 9, 2017) ...................................................................2, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................8

*Atlantis Info. Tech., GmbH v. CA, Inc.*,
  485 F. Supp. 2d 224 (E.D.N.Y. 2007) ................................................................................18

*Bader v. Wells Fargo Home Mortg. Inc.*,
  773 F. Supp. 2d 397 (S.D.N.Y. 2011) ................................................................................15

*BJC Health Sys. v. Columbia Cas. Co.*,
  478 F.3d 908 (8th Cir. 2007) ..............................................................................................16

*Brown v. Kerkhoff*,
  279 F.R.D. 479 (S.D. Iowa 2012) .......................................................................................19

*Brown v. N. Central F.S., Inc.*,
  987 F. Supp. 1150 (N.D. Iowa 1997) ...................................................................................17

*Budget Mtkg., Inc. v. Centronics Corp.*,
  927 F.2d 421 (8th Cir. 1991) ........................................................................................10, 14

*Chipokas v. Hugg*,
  477 N.W.2d 688 (Iowa App. 1991) ......................................................................................15

*Cohen v. Avanade, Inc.*,
  874 F. Supp. 2d 315 (S.D.N.Y. 2012) ...........................................................................14, 15

*Counsel Financial Services, LLC v. Melkersen Law, P.C.*,
  602 F. Supp. 2d 448 (W.D.N.Y. 2009) ...............................................................................15

*Crowe-Thomas Consulting Group, Inc. v. Fresh Pak Candy Co.*,
   494 N.W.2d 442 (Iowa Ct. App. 1992) ...................................................................10

*DeSouza v. Andy Frain Servs., Inc.*,
   2012 WL 3245496 (S.D.N.Y. Aug. 6, 2012) ............................................................9

*Dittmer Properties, L.P. v. F.D.I.C.*,
   708 F.3d 1011 (8th Cir. 2013) ...................................................................................4

*Enervations, Inc. v. Minn. Mining & Mfg. Co.*,
   380 F.3d 1066 (8th Cir. 2004) ...................................................................................1

*Estate of Brown v. Affiliated Workers Ass'n*,
   2014 WL 12601569 (S.D. Iowa May 30, 2014) .....................................................16

*Fesler v. Whelen Eng'g Co.*,
   794 F. Supp. 2d 994 (S.D. Iowa 2011) .....................................................................9

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   669 F. Supp. 2d 405 (S.D.N.Y. 2009) ...............................................................9, 11

*GFRE, Inc. v. U.S. Bank, N.A.*,
   13 N.Y.S.3d 452 (N.Y. App. 2nd Dep't 2015) ......................................................20

*Goel v. Ramachandran*,
   975 N.Y.S.2d 428 (N.Y. App. 2d Dep't 2013) ................................................19, 20

*Grawitch v. Charter Commc'ns, Inc.*,
   750 F.3d 956 (8th Cir. 2014) .....................................................................................8

*Grayson v. Ressler & Ressler*,
   271 F. Supp. 3d 501 (S.D.N.Y. 2017) .....................................................................11

*Horras v. Am. Capital Strategies, Ltd.*,
   2012 WL 12895646 (S.D. Iowa June 25, 2012) .....................................................18

*Horras v. Am. Capital Strategies, Ltd.*,
   729 F.3d 798 (8th Cir. 2013) ...................................................................................18

*In re 50 Pine Co., LLC*,
   317 B.R. 276 (S.D.N.Y. Bankr. 2004) ....................................................................15

*Integra FX3X Fund, L.P. v. Deutsche Bank, AG*,
   2016 WL 1169514 (S.D.N.Y. Mar. 22, 2016) ........................................................12

*Kreiss v. McCown Deleeuw & Co.*,
   37 F. Supp. 2d 294 (S.D.N.Y. 1999) .......................................................................10

*Matana v. Merkin,*
    989 F. Supp. 2d 313 (S.D.N.Y. 2013) ................................................ 12

*Mobro, Inc. v. VVV Corp.,*
    2012 WL 2429242 (N.D. Iowa June 26, 2012) .......................... 11, 12

*N. Shipping Fund I, LLC v. Icon Capital Corp.,*
    921 F. Supp. 2d 94 (S.D.N.Y. 2013) ................................................ 19

*Newkirk v. GKN Armstrong Wheels, Inc.,*
    168 F. Supp. 3d 1174 (N.D. Iowa 2016) ........................................ 15

*O'Hearn v. Bodyonics, Ltd.,*
    22 F. Supp. 2d 7 (E.D.N.Y. 1998) .................................................. 19

*Onanuga v. Pfizer, Inc.,*
    2003 WL 22670842 (S.D.N.Y. Nov. 7, 2003) .................................. 1

*Phillips v. Marist Soc. of Washington Province,*
    80 F.3d 274 (8th Cir. 1996) .............................................................. 8

*Raymie v. Ins. Co. of State of Penn.,*
    2009 WL 8621559 (S.D. Iowa Sept. 29, 2009) .............................. 18

*Stine Seed Co. v. A&W Agribusiness, LLC,*
    862 F.3d 1094 (8th Cir. 2017) ........................................................ 13

*Taylor v. Midland Nat'l Life Ins. Co.,*
    2016 WL 9454075 (S.D. Iowa July 29, 2016) .................................. 8

*Transcience Corp. v. Big Time Toys, LLC,*
    50 F. Supp. 3d 441 (S.D.N.Y. 2014) .............................................. 13

*U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.,*
    441 F.3d 552 (8th Cir. 2006) .......................................................... 16

*Valentini v. Citigroup, Inc.,*
    837 F. Supp. 2d 304 (S.D.N.Y. 2011) ............................................ 11

*Washburn v. Soper,*
    319 F.3d 338 (8th Cir. 2003) ............................................................ 8

*Waterman v. Nashua-Plainfield Cmty. Sch. Dist.,*
    446 F. Supp. 2d 1018 (N.D. Iowa 2006) ........................................ 14

*Wegner v. Schauer,*
    909 N.W.2d 230 (Iowa Ct. App. 2017) ............................................ 9

*Whirlpool Corp. v. Ritter*,
    929 F.2d 1318 (8th Cir. 1991) .................................................................................8

*Williams v. Sec. Nat. Bank of Sioux City, IA.*,
    293 F. Supp. 2d 958 (N.D. Iowa 2003) .................................................................1

*WIT Holding Corp. v. Klein*,
    724 N.Y.S.2d 66 (N.Y. App. 2d Dep't 2001) ......................................................18

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................15

Defendants Blue Apron, LLC and Blue Apron Holdings, Inc. (together, "Blue Apron") submit this Memorandum of Law in support of their Motion to Dismiss the Complaint.

## INTRODUCTION[1]

Plaintiffs—West Liberty Foods, L.L.C. ("WLF") and two of its subsidiaries (collectively with WLF, "West Liberty Group" or "Plaintiffs")—produce and sell meat products.  In February 2017, WLF—all on its own—bought the assets of Crystal Lake Farms ("Crystal Lake"), a loss-making poultry farm and processor shortly before its liquidation, and subsequently lost money on that business.  To try and recoup those losses, West Liberty Group has now filed this lawsuit against Blue Apron, asserting a variety of contract, quasi-contract, and other claims.

All of Plaintiffs' claims are premised on the same core allegation: that Blue Apron supposedly entered into a partnership with WLF to buy and operate Crystal Lake together, and that Blue Apron and WLF agreed to share profits and losses from that business equally.  But this theory is foreclosed by the ***very same documents*** on which Plaintiffs rely in the Complaint and which they contend gave rise to a partnership.  Plaintiffs' reliance on these documents for their allegations means that these documents are "necessarily embraced by the pleadings" and are thus appropriately considered at the Rule 12(b)(6) stage.  *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).[2]

The term sheet that WLF prepared and sent to Blue Apron on February 8, 2017 (the "Operating Term Sheet") is replete with disclaimers making clear that no partnership is being formed.  For example, it unambiguously states that "[t]his term sheet is not intended to be and ***does not constitute a legally binding obligation*** of the parties," and that "[n]o legally binding

---

[1] Unless otherwise noted, all emphasis has been added, and all internal quotations and citations omitted.

[2] *See also, e.g.*, *Williams v. Sec. Nat. Bank of Sioux City, IA.*, 293 F. Supp. 2d 958, 970 (N.D. Iowa 2003) (reviewing, at the Rule 12(b)(6) stage, "the documents purportedly embodying the 'contracts' at issue here"); *Onanuga v. Pfizer, Inc.*, 2003 WL 22670842, at *4 (S.D.N.Y. Nov. 7, 2003) (considering the contract even though plaintiffs did not attach it to the complaint, because it "form[ed] the basis for the allegations" in the complaint).

obligations of the parties will be created, implied, or inferred until appropriate documents in final form are executed." The February 14, 2017 letter of intent (the "Acquisition LOI") that West Liberty Group also references in the Complaint is equally unambiguous, stating: "***no binding agreement*** will be deemed to exist among the parties until a definitive purchase agreement is signed by the parties." Plaintiffs have not alleged that parties ever negotiated—let alone entered into—any such agreements to actually formalize any preliminary discussions that may have taken place. And Blue Apron does not believe that Plaintiffs could so allege in good faith.

Courts have repeatedly held that these kinds of term sheets, letters of intent, and other preliminary exchanges are non-binding and cannot establish a contract as a matter of law. *See, e.g.*, *Apothecus Pharm. Corp. v. Hendrickson*, 2017 WL 5495818, at *4 (E.D.N.Y. May 9, 2017) (dismissing contract claim where the letter of intent similarly said it did not create a "legally enforceable agreement"); *Andersen Investments, LLC v. Factory Card Outlet of Am., Ltd.*, 630 F. Supp. 2d 1030, 1034 (S.D. Iowa 2009) ("a LOI does not constitute a contract as a matter of law"). Without a written binding partnership agreement, all of West Liberty Group's claims fall apart. West Liberty Group has not plausibly alleged any contract-based claims, because such claims are barred by documents on which West Liberty Group itself relies. The quasi-contract claims are duplicative of the contract claims, and they also fail for other reasons as detailed below. Finally, the fraud claim should be dismissed because Plaintiffs fail to satisfy the heightened requirements of Rule 9(b); the breach of fiduciary duty claim should be dismissed because Plaintiffs have failed to plead facts showing that Blue Apron owed them any special duty; and the unjust enrichment claim should be dismissed because Plaintiffs did not plausibly allege any "unjust" conduct by Blue Apron. The Complaint should thus be dismissed in its entirety.

## PROCEDURAL HISTORY

Plaintiffs initially filed this lawsuit in the Iowa District Court for Dallas County on July 20, 2018.  (*See* Dkt. 1-2.)  On August 21, 2018, Defendants removed the action to this Court based on a good-faith belief that diversity jurisdiction exists.  (Dkt. 1.)  On September 12, Plaintiffs advised the Court that they "do not oppose removal[.]" (Dkt. 13 at 1.)

## FACTUAL BACKGROUND[3]

I.    **The Parties Engage in Preliminary Discussions About the Possibility of Jointly Buying a Poultry Business and Exchange a Preliminary Term Sheet; These Preliminary Discussions Are Never Further Formalized or Finalized.**

Blue Apron and WLF are both sophisticated commercial entities.  Blue Apron is a subscription-based ecommerce meal delivery company that delivers recipes and fresh ingredients for consumers to prepare at home.  (*See* Compl. ¶ 11.[4])  Plaintiffs are "in the business of producing high-quality protein products."  (*Id.* ¶ 10.)

Plaintiffs allege that in late 2016, Blue Apron "identified an opportunity to purchase organic, pasture-raised chicken operations and assets" held by certain entities to which Plaintiffs collectively refer as 'Former Co.'  (*Id.* ¶ 13.)  Plaintiffs allege that after these discussions, in February 2017 Blue Apron "agreed to form a partnership with West Liberty Foods to purchase the assets of Former Co. and then form a new company ('New Co') to operate the business," and to share the profits and losses from this venture equally with WLF.  (*Id.* ¶¶ 14, 19-20.)

Plaintiffs' sole support for these allegations consists of three documents:  (1) a February 2, 2017 email from Blue Apron's then-CEO Matt Salzberg, supposedly saying that Blue Apron and WLF are "50/50 partners"; (2) a term sheet WLF prepared and sent to Blue Apron on February 8, 2017 (i.e., the Operating Term Sheet); and (3) a letter of intent to buy the assets of

---

[3] The statement of facts is based on allegations in the Complaint and documents referenced therein.  Blue Apron does not admit the truth of any of WLF's allegations; they are assumed to be true for purposes of this motion.

[4] The Complaint is available at Dkt. 1-2, as an attachment to Blue Apron's notice of removal.

Former Co. that Blue Apron and WLF submitted to Former Co. and its owners on February 14, 2017 (i.e., the Acquisition LOI). (*Id.* ¶¶ 15-17; attached as Exhibits 1, 2, and 3 hereto.) All three documents are referenced in the Complaint, and all can thus properly be considered under this Court's Rule 12(b)(6) analysis.[5]   Not one of them supports the Complaint's partnership allegations.

**Feb. 2, 2017 Email.**  In the Complaint, West Liberty Group alleges that "on February 2, 2017, Blue Apron's Chief Executive Officer, Matt Salzberg, with actual or apparent authority to bind Blue Apron, sent an email to West Liberty Foods in which he confirmed a sales pitch to purchase Former Co. and asserted that '[Blue Apron] and [West Liberty Foods] are 50/50 partners." (Compl. ¶ 15 (alterations in original).) But West Liberty Group mischaracterizes the contents of this email. First, Mr. Salzberg did ***not*** send this email to WLF, contrary to Plaintiffs' allegations; instead, he sent this email internally within Blue Apron to summarize the current status of his preliminary discussions about a ***potential*** partnership with WLF. (*See* Ex. 1 at 1.) Second, the full context of that email makes clear that no partnership had been agreed on; instead, it refers to Blue Apron and Crystal Lake engaging in negotiations and exchanging offers. Specifically, Mr. Salzberg wrote:  "Spoke w[ith] [B]rad and sold him on our offer as best as I could. [ . . . ] Sounds like he has two other offers. [ . . . ] ***I expect we'll hear back from him tomorrow with a counter offer at a higher price***." (*Id.*) Thus, far from having agreed to any partnership, Mr. Salzberg was in fact waiting for a response and counteroffer to Blue Apron's offer to Crystal Lake.  And subsequent documents on which Plaintiffs rely for their allegations, discussed below, make clear that the parties in fact never did reach agreement on this supposed

---

[5] *See supra* n. 2; *Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) ("In adjudicating Rule 12(b) motions, courts are not strictly limited to the four corners of complaints," and can consider "matters incorporated by reference or integral to the claim.").

partnership, and that the Acquisition LOI was never countersigned by Crystal Lake and its owners.

**Feb. 8, 2017 Term Sheet.**  The second document on which Plaintiffs rely is the term sheet that WLF prepared and sent to Blue Apron on February 8, 2017.  (Ex. 2, "Operating Term Sheet.")  Plaintiffs did not attach this document to the Complaint and it is easy to see why:  the Operating Term Sheet not only fails to support their claims, it affirmatively disproves them.  For one, West Liberty Group does not allege that the parties executed (or even discussed or negotiated) the Operating Term Sheet (*see* Compl. ¶ 16), so it is hard to see the basis for Plaintiffs' contentions that the Operating Term Sheet gave rise to an "enforceable partnership and/or other enforceable agreement."  (*See id.* ¶ 18.)  Next, the Operating Term Sheet also does not support West Liberty Group's allegations that this document supposedly contemplated the parties "sharing equally in the profits and losses" of the poultry business.  (*Id.* ¶ 16.)  To the contrary, the Operating Term Sheet does not mention sharing losses at all; instead, it contemplates that "[e]ach party will own a fifty percent (50%) interest in Newco, and will be entitled to fifty percent (50%) of the voting rights, profits, and equity in Newco." (Ex. 2 at 1.)

Third, and more fundamentally, the Operating Term Sheet's plain language is unmistakable that it is merely a *proposal* rather than an agreement to enter a partnership, and that a partnership would be formed—if at all—only after the parties negotiated and executed a formal partnership agreement.  The Operating Term Sheet begins with a lengthy disclaimer, which repeatedly makes clear that this document creates no binding obligations on the parties and that such obligations will arise if (and only if) the parties negotiate and execute a ***subsequent written agreement*** (Ex. 2 at 1, highlighting added):

- 5 -

**TERM SHEET**

This term sheet summarizes the principal terms with respect to the formation of a limited liability company ("Newco"), whose members will be West Liberty Foods, L.L.C. ("WLF"), and Blue Apron, LLC ("Blue Apron"). This term sheet is not intended to be and does not constitute a legally binding obligation of the parties. No legally binding obligations on the parties will be created, implied, or inferred until appropriate documents in final form are executed regarding the subject matter of this term sheet and containing all other essential terms of an agreed upon transaction and delivered by all parties. Without limiting the generality of the foregoing, it is the parties' intent that, until that event, no agreement binding on the parties shall exist and there shall be no obligations whatsoever based on such things as parol evidence, extended negotiations, "handshakes," oral understandings, or courses of conduct (including reliance and changes of position). Efforts by either party to complete due diligence, negotiate, obtain financing, or prepare a contract shall not be considered as evidence of intent by either party to be bound by this term sheet or otherwise. The performance by either party prior to execution of a formal contract of any of the obligations which may be included in a contract between the parties when negotiations are completed shall not be considered as evidence of intent by either party to be bound by this term sheet.

Other portions of the Operating Term Sheet further make clear that it creates no binding obligations and that there has been no agreement or present intent to form a partnership. For example, it states that any obligation by either WLF or Blue Apron to proceed "shall be subject to the completion of due diligence" and "to the finalization and execution of *all documents* contemplated by this term sheet in form and substance satisfactory to both parties" (*id.* at 3, highlighting added):

| Due Diligence and Documentation | The obligation of either WLF or Blue Apron to proceed with the transactions contemplated herein shall be subject to the completion of due diligence with respect to the business and assets of Seller, to the satisfaction of both parties, and to the finalization and execution of all documents contemplated by this term sheet in form and substance satisfactory to both parties. |
|---|---|

Plaintiffs contend that the Operating Term Sheet gives rise to a binding partnership, but it is difficult to imagine more emphatic disclaimers to the contrary. Instead—as is common with these types of preliminary documents—the Operating Term Sheet merely reflects the state of WLF's proposal to Blue Apron at that time; it states that the Operating Term Sheet is "not intended to be . . . a legally binding obligation of the parties"; and it makes clear that "[n]o

legally binding obligations on the parties will be created, implied, or inferred until appropriate documents in final form are executed[.]" (*Id.* at 1.)  Plaintiffs have not (and cannot) allege that such final documents were ever executed.

**Feb. 14, 2017 Letter of Intent.**  The last document on which West Liberty Group relies is the Acquisition LOI "to purchase assets from Former Co.," which Plaintiffs allege "Blue Apron and West Liberty Foods jointly signed and submitted." (Compl. ¶ 17; Ex. 3.)  Plaintiffs do not allege that the Acquisition LOI was ever signed by Crystal Lake or its owners.  Nor do they explain how the Acquisition LOI supports their allegations that the parties supposedly entered into a partnership.  For one, it does not say that Blue Apron and WLF had actually agreed to be partners that would share profits and losses equally, so this document simply does not support West Liberty Group's 50-50 partnership allegations.  In addition, like the Operating Term Sheet, the Acquisition LOI unambiguously states that it *by itself* does not create any binding obligations on the parties until a purchase agreement is formalized (Ex. 3 at 1, highlighting added)—and, again, West Liberty Group has not alleged that the parties ever signed such an agreement:

> The terms of the purchase, including the $13 million aggregate purchase price, will be set forth in a standard asset purchase agreement to be executed as soon as practicable following your indication that you would like to move forward with the Transaction.  In order to avoid any misunderstandings, except with respect to the immediately succeeding paragraph, no binding agreement will be deemed to exist among the parties until a definitive purchase agreement is signed by the parties.

## II.   WLF Does Not Allege that After Providing the Operating Term Sheet and Submitting the Acquisition LOI, the Parties Negotiated and Entered Into a Formal Partnership Agreement.

As the plain text of these documents makes clear, and as further detailed in Argument Section I below, these documents cannot give rise to a partnership as a matter of law.  The February 2, 2017 email from Mr. Salzberg was not sent to or even intended for WLF.  In any

event, it does not say that the parties actually agreed to enter into a 50/50 partnership; instead, it merely reflects that the parties were engaged in discussions about a potential partnership. Preliminary documents that the parties exchanged after this February 2 email then plainly state that yet-to-be-created definitive agreements would be needed to form any legally binding relationship between the parties, but Plaintiffs do not allege that the parties ever negotiated and formalized anything further.  And aside from these documents, Plaintiffs also do not allege that the parties exchanged any communications of any kind that could give rise to a partnership either.  So according to Plaintiffs' own allegations and documents, the parties' negotiations with respect to a potential partnership never progressed past this preliminary stage, and no partnership was ever formed.

## ARGUMENT

To survive a Rule 12(b)(6) motion, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 960 (8th Cir. 2014).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A federal court sitting in diversity must apply the substantive law of the state in which it sits, including its choice-of-law rules. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991).  Iowa generally applies the "most significant relationship" test for contract and tort claims. *See Washburn v. Soper*, 319 F.3d 338, 342 (8th Cir. 2003).  Here, Defendants are citizens of New York and Delaware with their principal place of business in New York; Plaintiffs, meanwhile, appear to bring their claims under Iowa law.  But the Court need not resolve the choice-of-law issue at this early stage, because when relevant laws of the different

jurisdictions do not differ, a choice-of-law analysis is unnecessary. *See Phillips v. Marist Soc. of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996) (analysis only needed if "true conflict" exists); *Taylor v. Midland Nat'l Life Ins. Co.*, 2016 WL 9454075, at *3 (S.D. Iowa July 29, 2016) (declining to engage in choice-of-law analysis where outcome was the same under either potentially applicable state's laws). As detailed below, there are no material conflicts between New York and Iowa law for purposes of this motion. Plaintiffs' claims fail under either state's laws and should be dismissed.

## I.     Plaintiffs Fail to State a Claim for Breach of a Written Contract (Count I).

Plaintiffs' breach of contract claim fails for two independent reasons: (1) courts consistently hold that preliminary exchanges of terms like the Operating Term Sheet and the Acquisition LOI here do not create a contract as a matter of law; and (2) Plaintiffs have not even alleged what provision of the supposed "contract" Defendants breached—which is not surprising, since Plaintiffs have failed to allege that a contract actually existed. Count I should be dismissed accordingly.

*First*, Plaintiffs have not pled that an enforceable contract exists. The "existence of a contract" is an obvious prerequisite to a breach of contract claim under both Iowa and New York law. *See Fesler v. Whelen Eng'g Co.*, 794 F. Supp. 2d 994, 1016 (S.D. Iowa 2011); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). And to show that an enforceable contract exists, Plaintiffs must plausibly allege "the parties' mutual assent and mutual intent to be bound." *DeSouza v. Andy Frain Servs., Inc.*, 2012 WL 3245496, at *2-3 (S.D.N.Y. Aug. 6, 2012); *Wegner v. Schauer*, 909 N.W.2d 230 (Iowa Ct. App. 2017) (Iowa law likewise requires "mutual assent to the terms of the contract" for "a contract to be valid").

Plaintiffs have not plausibly alleged that WLF and Blue Apron mutually agreed to enter into a partnership and to equally share profits and losses. As detailed above, the documents on

which Plaintiffs rely in fact conclusively demonstrate the opposite:  they make clear that the parties did ***not*** agree to be bound by any legal obligations, and that no obligations would arise until after the parties have negotiated and executed a written agreement to formalize the partnership.  But again, Plaintiffs have not (and cannot) allege that such an agreement was ever executed.

Courts that analyze similar letters of intent and term sheets consistently come to the same conclusion:  these kinds of preliminary documents cannot establish a contract as a matter of law. That is the law in New York.  *See, e.g.*, *Kreiss v. McCown Deleeuw & Co.*, 37 F. Supp. 2d 294, 300-301 (S.D.N.Y. 1999) (dismissing breach of contract claim where term sheet stated that "the parties' respective legal obligations . . . shall arise solely from definitive documents to be entered into" subsequent to the term sheet, because "[t]his unambiguous expression of the parties' intent not to be bound establishes that, as a matter of law, the Term Sheet was not binding.").[6]  And that is also the law in Iowa.  *See, e.g.*, *Crowe-Thomas Consulting Group, Inc. v. Fresh Pak Candy Co.*, 494 N.W.2d 442, 443-44 (Iowa Ct. App. 1992) (an LOI stating it was "subject to the negotiation and execution of a definitive agreement" was "nothing more than an invitation to continue negotiations with an agreement to agree or disagree in the future"); *Budget Mtkg., Inc. v. Centronics Corp.*, 927 F.2d 421, 423, 426 (8th Cir. 1991) (finding that a letter of intent which stated "this letter shall not be construed as a binding agreement" was "not binding," and that this conclusion was "consistent with Iowa authorities") (collecting cases).[7]

---

[6]  *See also, e.g.*, *Aksman v. Xiongwei Ju*, 799 N.Y.S.2d 493, 494-95 (N.Y. App. 1st Dep't 2005) (reversing trial court's denial of motion to dismiss because the LOI, which "expresse[d] the parties' intention to enter into a contract 'at a later date' and nowhere state[d] that they intend to be legally bound until such future agreement is reached," was "clearly a preliminary, non-binding proposal to agree").

[7]  *See also, e.g.*, *Andersen Investments, LLC v. Factory Card Outlet of Am., Ltd.*, 630 F. Supp. 2d 1030, 1034-35 (S.D. Iowa 2009) (relying on *Crowe-Thomas* to hold that an LOI, which stated that the formation of a lease was "subject to . . . the negotiation and the execution of a mutually acceptable lease" between the parties, "as a matter of law . . . did not create a written contract binding either side") (first ellipsis in original).

Because the plain language of the documents on which Plaintiffs rely shows there was no mutual assent to enter into a partnership, the Court should dismiss this claim on the pleadings. *See, e.g.*, *Kreiss*, 37 F. Supp. 2d at 300 (dismissing because "the Court need look no further than the language of the Term Sheet"); *Aksman*, 799 N.Y.S.2d at 495 (reversing denial of motion to dismiss where the text of the letter of intent indicated it was a "preliminary, non-binding proposal to agree"); *Apothecus Pharm. Corp. v. Hendrickson*, 2017 WL 5495818, at *4 (E.D.N.Y. May 9, 2017) (dismissing where the LOI said it was not "a legally enforceable agreement").

**Second**, Count I should in any event be dismissed because to plead a claim for breach of contract, Plaintiffs must at least allege what "specific provisions of the contract they claim [d]efendants breached." *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) (dismissing on that basis); *Fuji Photo Film*, 669 F. Supp. 2d at 412 ("the claimant must allege the specific provisions of the contract upon which the breach of contract claim is based").  Plaintiffs have not met this basic burden.  They vaguely allege that "Blue Apron has refused to pay for its share (50%) of the losses related to Crystal Farms, thereby breaching the written contract." (Compl. ¶ 32.)  But Plaintiffs cannot even identify what written contract this obligation comes from, let alone attach a written contract with such a provision to the Complaint.  And in fact, as detailed above, not one of the three documents on which Plaintiffs rely says that Blue Apron ever agreed to share WLF's losses 50-50.  Because Plaintiffs have not alleged what contractual language Blue Apron supposedly breached, Count I fails on the pleadings.

## II.     Plaintiffs Fail to State a Claim for Breach of Oral Contract (Count II).

Plaintiffs' claim for breach of oral contract should be dismissed for a simple reason:  they have not alleged the basic elements of such a claim.  Under either New York or Iowa law, "to survive motion to dismiss on a breach of contract claim," a plaintiff must allege the contract

existed, performance, breach, and damages. *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 521 (S.D.N.Y. 2017) (New York law); *accord Mobro, Inc. v. VVV Corp.*, 2012 WL 2429242, at *4-6 (N.D. Iowa June 26, 2012) (same elements).

Plaintiffs have failed to plausibly allege *any* of these elements. They allege no oral statements that purportedly gave rise to a partnership; instead, the only communications on which Plaintiffs rely are the February 2 email, the Acquisition LOI, and the Operating Term Sheet. (Compl. ¶¶ 15-18.) None of these can give rise to a partnership as a matter of law, for reasons detailed above. But even more fundamentally for purposes of this claim, none of these are *oral* communications that could plausibly show that an oral contract existed, what its terms were, or that Blue Apron breached this oral contract. With no plausible allegations to support these basics elements, Count II fails on the pleadings. *See, e.g.*, *Matana v. Merkin*, 989 F. Supp. 2d 313, 319 (S.D.N.Y. 2013) (dismissing oral contract claim as "inadequately pled" where the complaint did not "allege an exchange of promises or other consideration, nor [did] it allege the date on which the contract was entered."); *Integra FX3X Fund, L.P. v. Deutsche Bank, AG*, 2016 WL 1169514, at *3 (S.D.N.Y. Mar. 22, 2016) (dismissing oral contract claim where the complaint did "not allege any oral representations" and "fail[ed] to allege an exchange of promises or other terms of an oral contract."); *Mobro*, 2012 WL 2429242, at *4-6 (dismissing for failure to "allege[] sufficient facts to demonstrate the plausible existence of an oral contract.").

Moreover, "[t]he analysis of any oral contract . . . does not proceed in isolation, but in the shadow of the parties' written expressions." *See Andersen Investments, LLC*, 630 F. Supp. 2d at 1036. The written expressions here (the Acquisition LOI and the Operating Term Sheet) unequivocally show the parties' intent was that no partnership would be created unless the

parties formalized it in a subsequent written agreement—not an oral contract.  Given these documents, Plaintiffs cannot fix this pleading defect with an amendment.

### III.   Plaintiffs Fail to State a Claim for Breach of an Implied Contract (Count III).

The implied contract claim fails for a similar reason as the oral contract claim.  To state this claim, both New York and Iowa require allegations to support the plausible inference that the parties' conduct established all elements of a traditional contract.  *See Andrews v. Sony/ATV Music Publ'g, LLC*, 2017 WL 770614, at *4-5 (S.D.N.Y. Feb. 24, 2017) (an "implied-in-fact contract requires all of the elements required of any valid contract, including consideration, mutual assent, legal capacity, and legal subject matter"); *Stine Seed Co. v. A&W Agribusiness, LLC*, 862 F.3d 1094, 1101 (8th Cir. 2017) ("Under Iowa law, parties form an implied-in-fact contract when their agreement is manifested by conduct—in contrast to an express contract, which parties form when they manifest their agreement by words"; both are "contracts formed by a mutual manifestation of assent by the parties to the same terms of the contract.")

Just as with their oral argument claim, Plaintiffs have not alleged any actions by Blue Apron to plausibly support *any* of the elements of an implied contract—let alone all of them.  Instead, Plaintiffs' sole support for this claim comes from their allegations regarding the *written* documents the parties exchanged.  (*See* Compl. ¶¶ 41-50.)  But those documents cannot support any partnership agreement, for reasons explained above, and Plaintiffs allege nothing about the parties' *conduct* that could plausibly show all elements of an implied contract.  With no allegations that the parties, through their conduct, satisfied all basic elements of a contract— offer, acceptance, consideration, and breach—Plaintiffs' claim for breach of implied contract should be dismissed on the pleadings.  *See, e.g.*, *Andrews*, 2017 WL 770614, at *5 (dismissing implied contract claim where plaintiff failed to allege "a course of conduct" that would show the

- 13 -

"pertinent terms of the purported contract," "the parties' obligations," or "the intention or assent to be bound").

There is another reason why Plaintiffs' implied contract claim fails on the pleadings: "a contract may not be implied in fact from the conduct of the parties where it appears that they intended to be bound only by a formal written agreement." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 455-56 (S.D.N.Y. 2014); *see Budget Mtkg., Inc.*, 927 F.2d at 423, 426 (declining to find "implied agreement to negotiate in good faith" where the LOI at issue stated that it "shall not be construed as a binding agreement").  Here, as discussed above, the parties repeatedly acknowledged in writing that any discussions were preliminary and that no binding obligations would be created for either party until a formal written agreement was executed. These documents leave no room for doubt that the parties intended to be bound only by a formal written agreement, and thus no contract can be implied from the parties' conduct, which in any event Plaintiffs have failed to allege.

## IV.     Plaintiffs Fail to State a Claim for Promissory Estoppel (Count IV).

Count IV fails because Plaintiffs have not alleged a clear and definite promise—an essential element of a promissory estoppel claim.  *See Waterman v. Nashua-Plainfield Cmty. Sch. Dist.*, 446 F. Supp. 2d 1018, 1025 (N.D. Iowa 2006) (elements of promissory estoppel under Iowa law include a "clear and definite promise"); *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 322 (S.D.N.Y. 2012) (New York law likewise requires "a clear and unambiguous promise").

The sole promises that Plaintiffs identify for this claim are that Blue Apron supposedly promised "to share a portion of the profits from New Co." and to "absorb fifty percent of any losses related to West Liberty Food's acquisition of Former Co. and its operation of New Co." (Compl. ¶¶ 52-53.)  But these allegations are refuted by the documents that Plaintiffs incorporate by reference into the Complaint.  Those documents make clear that Blue Apron was not making

any definite promise that Blue Apron and WLF were 50-50 partners.  The February 2 email on
which Plaintiffs rely is Blue Apron's internal summary of the parties' negotiation positions.  It
does not show a "clear and definite promise" from Blue Apron to WLF, since Mr. Salzberg in
fact did not send it to WLF, nor does it specify that Blue Apron would absorb fifty percent of the
losses related to WLF's acquisition of Crystal Lake.  And the post-February 2 documents (the
Operating Term Sheet and the Acquisition LOI) unambiguously and unequivocally state that no
partnership was being created, and that any such agreement was conditional on the parties
negotiating and executing a formal partnership agreement.  This claim should be dismissed
accordingly.  *See, e.g., Cohen*, 874 F. Supp. 2d at 318, 322 (dismissing promissory estoppel
claim brought by plaintiff-employee who argued that defendant promised and failed to pay him a
bonus, where "the unambiguous terms of the [employment agreement] . . . make clear that bonus
determinations are subject to [defendant's] discretion and set forth conditions for receiving a
bonus, which [plaintiff] did not meet"); *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d
397, 415 (S.D.N.Y. 2011) (dismissing claim where the alleged oral promise contradicted the
express terms of a written document); *Chipokas v. Hugg*, 477 N.W.2d 688, 689, 691 (Iowa App.
1991) (no promissory estoppel claim based on a "proposal to lease," which stated that the
proposal was "conditional upon a final lease acceptable to both [parties]," because this language
was "decidedly conditional, not definite" and left "[s]ome details . . . for future negotiation";
thus, there was no "clear and definite agreement").[8]

---

[8] *See also In re 50 Pine Co., LLC*, 317 B.R. 276, 285 (S.D.N.Y. Bankr. 2004) (dismissing promissory estoppel claim
where "CapitalSource and the Debtor memorialized the potential terms of [a] [loan] agreement" in a term sheet,
but the term sheet contained "numerous disclaimers . . . to the effect that, after due diligence, CapitalSource could
decide not to consummate the loan."); *Cohen*, 273 F. Supp. 2d at 530-31 (no promissory estoppel claim where key
document "expressly provided that [defendant] would not be bound" until certain contingencies were satisfied);
*Newkirk v. GKN Armstrong Wheels, Inc.*, 168 F. Supp. 3d 1174, 1189 (N.D. Iowa 2016) (no promissory estoppel
claim where source of promise "repeatedly disclaimed any intention to create" a contract); *Counsel Financial
Services, LLC v. Melkersen Law, P.C.*, 602 F. Supp. 2d 448, 452 (W.D.N.Y. 2009) (statements that convey a

**V.     Plaintiffs Fail to State a Claim for Fraud (Count V).**

A party bringing a fraud claim must "state with particularity the circumstances constituting fraud[.]" Fed R. Civ. P. 9(b).  That means that "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *See U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

Plaintiffs do not plausibly allege any of these elements—they do not plead, for example, who made the supposedly false representation, when it happened, where it happened, or to whom it was communicated.  Having failed to allege the basic "who, what, where, when, and how" of the supposed fraud, *U.S. ex rel. Joshi v. St Luke Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006), Plaintiffs' allegations fall far short of Rule 9(b)'s heightened standard.

With no well-pled facts, Plaintiffs fall back on legal conclusions. They contend that Blue Apron supposedly promised to partner with WLF, that these representations were "material," that Blue Apron knew "its representations were false" or "made in reckless disregard of the truth," that Blue Apron "intended to deceive" WLF, and that WLF reasonably relied on and was harmed by such alleged misrepresentations.  (*See* Compl. ¶¶ 60-65.)  But these are legal conclusions that are not entitled to be presumed true for purposes of this Court's Rule 12(b)(6) analysis.  And such "formulaic recitation of the elements" falls far short of what Rule 9(b) requires.  *See Estate of Brown v. Affiliated Workers Ass'n*, 2014 WL 12601569, at *3-4 (S.D. Iowa May 30, 2014) (dismissing fraud claim where the complaint failed to plead "the time, place, and content of the defendant's false representations, as well as the details of the

---

desire to "consummate or further a commercial transaction do not constitute a clear and unambiguous promise" that could give rise to a promissory estoppel claim).

defendant's fraudulent acts"); *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (noting that Rule 9(b) requires plaintiff to identify the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby," and dismissing for failure to plead such facts because "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule").

More fundamentally, there are simply ***no*** allegations that could support a plausible inference that Blue Apron ever told WLF anything that was untrue.  Any of Blue Apron's supposed representations about a possible partnership were accompanied by lengthy disclaimers which made clear that no partnership was ***presently*** being created, that further negotiations and documentation were required, and that any partnership was contingent on such further negotiations and on formal agreements being finalized and executed.

Nor do Plaintiffs allege anything that even hints at any fraudulent intent by Blue Apron, let alone plead "facts that give rise to a strong inference of fraudulent intent" that Rule 9(b) requires.  *See Brown v. N. Central F.S., Inc.*, 987 F. Supp. 1150, 1156 (N.D. Iowa 1997).  The allegations and the documents referenced in the Complaint together show that the parties engaged in preliminary discussions about a potential partnership, that the parties recognized (through contemporaneous documents) that such a partnership would only be consummated—if at all—through subsequent negotiations and execution of a formal partnership agreement, and that the parties simply never progressed to that stage.  Nothing in the Complaint plausibly alleges any intent by Blue Apron to defraud WLF.

In any event, even if Blue Apron had made any enforceable promises to WLF—which Blue Apron emphatically never did, as demonstrated by the very documents that Plaintiffs cite—

"broken promises do not generally give rise to any inference of fraudulent intent at the time the promises were made." *Id.* at 1157 (collecting cases). There is no basis for any fraud claim here.

## VI.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Count VI).

Plaintiffs' claim for breach of fiduciary duty fails because they have not alleged that WLF and Blue Apron's relationship was anything other than a regular, arms'-length commercial negotiation. As courts consistently recognize, such a business relationship does not give rise to a fiduciary duty as a matter of law.

A basic element of this claim is that Plaintiffs must plausibly allege that "the defendant owed the plaintiff a fiduciary duty." *Horras v. Am. Capital Strategies, Ltd.*, 2012 WL 12895646, at *2 (S.D. Iowa June 25, 2012). A fiduciary duty only exists when one party is under a "duty to act for or to give advice for the benefit of [the other party] upon matters within the scope of the relationship." *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801-02 (8th Cir. 2013) (Iowa law); *see WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (N.Y. App. 2d Dep't 2001) (under New York law, "a fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge").

Plaintiffs have not plausibly alleged that Blue Apron owed them fiduciary duties. They allege that "[a] fiduciary relationship existed" between the parties and that "Blue Apron owed fiduciary duties to Plaintiffs" (Compl. ¶ 67-68)—but these are legal conclusions, not well-pled facts. The Complaint alleges nothing to show *why* Blue Apron had any special relationship with Plaintiffs in discussing the potential acquisition of another business with WLF. Nor do Plaintiffs allege anything to support a reasonable inference that the parties had anything other than a regular, arms'-length business relationship in discussing this potential acquisition.

But it is hornbook law that "an arms-length business relationship does not give rise to a fiduciary obligation." *Klein*, 724 N.Y.S.2d at 68; *see Raymie v. Ins. Co. of State of Penn.*, 2009

WL 8621559, at *3 (S.D. Iowa Sept. 29, 2009) ("there is no fiduciary relationship" where "the parties are operating at arms' length"). With no facts to plausibly support a fiduciary duty by Blue Apron, this claim fails on the pleadings. *See, e.g., Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 231-32 (E.D.N.Y. 2007) (explaining that when "parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances" and that it is "clear that a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation," and dismissing fiduciary duty claim despite plaintiff's allegations that "it had trust and confidence in the defendant" because "that is not extraordinary").[9]

Indeed, Plaintiffs' claim for breach of fiduciary duty makes no sense. The **only** source of Blue Apron's supposed fiduciary duties that Plaintiffs plead is the alleged partnership between Blue Apron and WLF. (Compl. ¶ 67.) Plaintiffs presuppose that they have adequately alleged that Blue Apron and WLF were partners (which they have not, for reasons discussed above), and they allege that Blue Apron owed WLF fiduciary duties as a result. But the only alleged breach of Blue Apron's fiduciary duties is that Blue Apron supposedly "fail[ed] to disclose its secret intention not to share in the losses of New Co." (Compl. ¶ 69.) This alleged breach would have taken place **before** any partnership was formed and before any fiduciary duties could thus conceivably attach to Blue Apron. Thus, even if Plaintiffs had adequately alleged a partnership (and they have not), they still have not alleged any breach of Blue Apron's fiduciary duties that took place **after** the partnership was formed and after any fiduciary duties could have possibly existed. This count should be dismissed accordingly.

---

[9] *See also O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 12 (E.D.N.Y. 1998) (dismissing claim for breach of fiduciary duty because "an arms-length commercial transaction generally does not give rise to a fiduciary relationship"); *N. Shipping Fund I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 104 (S.D.N.Y. 2013) (dismissing fiduciary duty claim where the complaint did not allege facts to "suggest[] that [the parties] were engaged in anything but an arm's length commercial transaction").

**VII.     Plaintiffs Fail to State a Claim for Unjust Enrichment (Count VII).**

Under both Iowa and New York law, to state an unjust enrichment claim, a plaintiff must plead that the defendant received a "benefit" and that it is "against equity and good conscience to permit the defendant to retain what is sought to be recovered." *See Goel v. Ramachandran*, 975 N.Y.S.2d 428, 437 (N.Y. App. 2d Dep't 2013); *accord Brown v. Kerkhoff*, 279 F.R.D. 479, 494 (S.D. Iowa 2012) ("To prove unjust enrichment, Plaintiffs must demonstrate that Defendants profited at Plaintiffs' expense; Plaintiffs must show that Defendants retained a benefit in excess of Plaintiffs' gain."). "[A] plaintiff's allegation that the [defendant] received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment. Critical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust." *Goel*, 975 N.Y.S.2d at 437-38 (alterations in original).

But there is nothing in the Complaint to support the plausible inference that Blue Apron was unjustly enriched at Plaintiffs' expense. The documents referenced in the Complaint repeatedly made clear that no partnership was being formed, and that no binding obligations would be created unless the parties executed a subsequent written partnership agreement. Plaintiffs nonetheless unilaterally decided to proceed with the acquisition of Former Co. despite all these clear disclaimers, and even though Blue Apron never actually agreed to form a partnership and to be responsible for half of all profits and losses. There is nothing "unjust" about holding Plaintiffs alone responsible for those choices. *See, e.g.*, *Goel*, 975 N.Y.S.2d at 437-38 (dismissing on the pleadings where the complaint only alleged in conclusory terms that defendant retained "funds from which it benefitted" and that it was "unjust" for defendant to retain those funds); *GFRE, Inc. v. U.S. Bank, N.A.*, 13 N.Y.S.3d 452, 454 (N.Y. App. 2nd Dep't 2015) (affirming dismissal of unjust enrichment claim where the complaint failed to allege any

facts beyond conclusory language that defendant was "unjustly enriched" by collecting certain bank fees).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

THE WEINHARDT LAW FIRM

By    /s/ David Fautsch
Mark E. Weinhardt, AT0008280
David N. Fautsch, AT0013223
Elisabeth A. Archer, AT0012638
2600 Grand Avenue, Suite 450
Des Moines, IA  50312
Telephone:  (515) 244-3100
mweinhardt@weinhardtlaw.com
dfautsch@weinhardtlaw.com
earcher@weinhardtlaw.com

Jay P. Lefkowitz
Dmitriy Tishyevich
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
lefkowitz@kirkland.com
dmitriy.tishyevich@kirkland.com
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
*Admitted pro hac vice*

**ATTORNEYS FOR DEFENDANTS**

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was
served upon the parties to this action by serving a copy upon each
of the attorneys listed below on Sept. 24, 2018 by

☐  U.S. Mail              ☐  FAX

☐  Hand Delivered         ☐  Electronic Mail

☐  FedEx/ Overnight Carrier   ☒  EDMS

David A. Tank
Angela E. Dralle
DORSEY & WHITNEY LLP
801 Grand Avenue, Suite 3900
Des Moines, IA  50309-2790

            */s/ David Fautsch*
Signature: _____